# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| DORIS MENEFEE, | : | CIVIL ACTION |
|  | : |  |
| Plaintiff, | : |  |
|  | : | No. 08-981 |
| v. | : |  |
|  | : |  |
| CHOICEPOINT, INC. and | : |  |
| RITE AID CORPORATION, | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                      **JANUARY 26, 2009**

Presently before the Court is a Motion to Compel Discovery filed by Plaintiff Doris

Menefee ("Menefee") and a Motion for Protective Order filed by Defendant ChoicePoint, Inc.

("ChoicePoint").  For the reasons set forth below, Menefee's Motion will be granted in part and

denied in part, and ChoicePoint's Motion will be granted in part and denied in part.

## I.       FACTS

On February 26, 2008, Menefee filed a class action Complaint against Rite Aid

Corporation ("Rite Aid") and ChoicePoint, alleging violations of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i and 1681s-2, as well as defamation.  Specifically,

Menefee claims that Rite Aid submitted a false theft incident report to ChoicePoint, which she

asserts is a national consumer reporting agency covered by FCRA.  Menefee alleges that

ChoicePoint failed to follow reasonable procedures to assure the maximum possible accuracy of

the information it was provided about Menefee when it prepared its consumer report ("Esteem

Report").[1]  On March 28, 2008, ChoicePoint filed a "Motion to Strike Class Allegations and Class Claims for Relief."  Menefee subsequently withdrew her class action claims by filing an Amended Complaint on May 29, 2008.  Consequently, by Order dated June 18, 2008, ChoicePoint's Motion to Strike was dismissed as moot.

According to her Amended Complaint, Menefee is a 61-year-old worker who, for twelve years ending in February 2007, was the assistant manager of a Rite Aid store in North Philadelphia.  Menefee alleges that, on January 30, 2007, as part of an investigation of inventory losses in her store, she was questioned by a corporate loss prevention investigator about her knowledge of various company policies.  (Pl.'s Am. Compl. ¶ 17.)  She asserts that, after the investigator asked her about the company's employee discount policy and her use of her discount card for other people's purchases, she stated that her grand-niece, who resided with her, used the card.  (Id. ¶¶ 18-19.)  Menefee claims that the investigator accused her of using her discount privilege improperly because, according to him, a niece is not among the relatives allowed to use the discount card.  (Id.)  Menefee states that she explained that she had never intended to misuse her discount privileges and that her grand-niece was, in fact, part of her household.  (Id. ¶ 20.)  Menefee also asserts that Rite Aid's policy regarding the discount card expressly extends the employee discount to "co-dependent family members," an undefined term in the policy, who

---

[1] The report at issue is contained in a national, proprietary database called "Esteem" that ChoicePoint markets to major retail chains.  The information in the Esteem database consists of employee theft and shoplifting incidents contributed by subscribers.  (Pl.'s Am. Compl. ¶¶ 10-14.)  The Esteem system contains two types of records: criminal records that ChoicePoint compiles from public record searches and "theft records" that it gathers from theft incident reports submitted by subscribers.  (Id.)  These theft reports involve theft of merchandise, cash or property of more than five dollars where the incident resulted either in prosecution or a signed admission by the subject of the report.  For a fee, subscribers have 24-hour access to Esteem via the internet, telephone or other media.  (Id.)

reside with the employee.  (Id. ¶¶ 21-22.)

Nevertheless, Menefee alleges that the investigator directed her to put in writing an acknowledgement of her supposed misunderstanding about the policy, required her to estimate the total purchases made by her grand-niece with the discount card, and assured her that doing so would enable her to return to work without consequences.  (Id.  ¶¶ 23-28.)  Menefee also claims that the investigator "coached her written statement."  (Id.)  The following week, Menefee was fired.  Menefee claims that she was not given any explanation for her firing, nor was she given a copy of the statement that she had written on January 30, 2007 during the loss-prevention interrogation.  (Id. ¶¶ 29-31.)

After the January 30, 2007 incident, Rite Aid submitted a report concerning Menefee to ChoicePoint's "Esteem" database.  Rite Aid's submission included Menefee's signed, handwritten admission statement.  ChoicePoint asserts that only one subscriber, CVS, obtained the Esteem Report concerning Menefee.  Menefee claims that CVS preliminarily offered her a job conditioned on her clearing a background search, but later informed her that she could not be hired based on the Esteem Report it obtained stating that, while employed by Rite Aid, she had admitted committing "cash register fraud" in the amount of $200.  She was provided a copy of the Esteem Report that listed this incident as having occurred on January 30, 2007, and she was also informed of her right under FCRA to dispute the accuracy of the report.  (Id. ¶¶ 36-38.)

In June 2007, Menefee submitted to ChoicePoint a detailed letter explaining the January 30 incident, along with a copy of the letter from the unemployment compensation agency awarding her benefits.  She requested deletion of the theft report.  (Id. ¶¶ 39-40.)  ChoicePoint contends that Menefee admits in her letter "that she wrote and signed an 'admission statement'

3

detailing misuse of her associate discount card at Rite Aid." Nevertheless, ChoicePoint claims that it immediately rechecked the theft report with Rite Aid, and Rite Aid stood by its report. After ChoicePoint verified the report, it informed Menefee of that fact. Menefee subsequently filed this action.

Menefee served her First Set of Interrogatories and Requests for Production of Documents to ChoicePoint on August 11, 2008. The request consisted of ten interrogatories and seven requests for production relating to Menefee's Esteem Report and to the workings of the Esteem system more generally.[2] On September 15, 2008, ChoicePoint served its response. Other

---

[2] The interrogatories and requests for production relevant to the instant Motions read as follows:

1. Interrogatory No. 4A: Describe what data ChoicePoint maintains regarding Esteem records, including in this description a) the form in which this data is maintained, b) whether this data is readable by Excel, Access or some other identified commercial spreadsheet or database software, c) the fields included in such records, d) an identification of the person or persons who are most knowledgeable about the database. ("Esteem record" refers to the information about a particular individual that is contributed to ChoicePoint by a subscribing member of Esteem and that is reported back to other members who request background information on the individual. By "data," Plaintiff is referring not to the Esteem record itself, but rather to the information contained in Esteem records that exists independently in an electronic form sufficient to allow that information to be aggregated and sorted.)

2. Interrogatory No. 4B: Employing the same definitions of "Esteem record" and "data," describe what data ChoicePoint maintains regarding consumer disputes filed by consumers who challenge the accuracy or completeness of an Esteem record and the disposition of those consumer disputes by ChoicePoint, including in this description a) the form in which this data is maintained, b) whether this data is readable by Excel, Access or some other identified commercial spreadsheet or database software, c) the fields included in such records, d) an identification of the person or persons who are most knowledgeable about the database.

3. Interrogatory No. 6: Identify all data fields associated with an individual for whom a derogatory report exists in the Esteem database.

4. Interrogatory No. 7: Identify the following individuals: a. The person currently in charge of the department or division of ChoicePoint WorkPlace Solutions in which the consumer service representatives are located; b. The person in charge of the Consumer Disclosure department or division; c. The current Director of Operations of Esteem Information Service; d. The person who is in charge of the department or division responsible for communications to members of Esteem regarding Esteem procedures and best practices.

5. Interrogatory No. 10: Describe the information you maintain relating to a consumer dispute and

than providing some documents that pertain specifically to Menefee, ChoicePoint has asserted, and continues to assert, that many of the discovery requests are objectionable under the Rules of Civil Procedure.  The parties have also attempted to negotiate a stipulated Protective Order, and have agreed to all terms of the Order except for one – whether Menefee's counsel must limit his use of discovery to the instant case.

## II.    STANDARD OF REVIEW

### A.    Motion to Compel Discovery

Rule 26(b)(1) provides that discovery need not be confined to matters of admissible evidence but may encompass that which "appears reasonably calculated to lead to the discovery of admissible evidence."  In responding to interrogatories, "[a party] cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof[,] . . . [r]ather, [the party resisting discovery] . . . has the burden to clarify and explain its objections and to

---

any reinvestigation conducted regarding the matters covered by such a dispute, such as logs or account notes, including the kinds of information maintained and the form in which this information is maintained.

6. Request for Production No. 1: All documents identified in or relating to the answers to the above interrogatories.

7. Request for Production No. 5: All manuals, emails, communications, reports, analyses, correspondence or other documents relating to the policies and/or operation of the Esteem program, including, but not limited to the following: a. The prerequisites, characteristics or form of a writing that you will accept as an admission statement sufficient to be the basis of an Esteem report; b. The procedures for responding to a consumer dispute and for the conduct of a reinvestigation in response to such a consumer dispute; c. The training and instruction of contributing members; d. Esteem operating procedures; or e. The tracking of consumer disputes and resolutions.

8. Request for Production No. 6: The member services agreement between you and Rite Aid and any other documents relating to the contractual relationship between you and Rite Aid.

provide factual support therefore." <u>Doe v. Mercy Health Corp.</u>, No. 92-6712, 1993 U.S. Dist. LEXIS 13347, at *8-9 (E.D. Pa. Sept. 13, 1993) (quoting <u>Martin v. Easton Publ'g Co.</u>, 85 F.R.D. 312, 316 (E.D. Pa. 1980)) (internal quotations omitted).  Furthermore, for purposes of discovery, relevance is to be broadly construed and is not limited to the precise issues set out in the pleadings or to the merits of the case.  <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978).  The facts and circumstances of a case determine and limit the relevancy of information sought in discovery.  <u>Cont'l Access Control Sys., Inc. v. Racal-Vikonics, Inc.</u>, 101 F.R.D. 418, 419 (E.D. Pa. 1983).  Since the precise boundaries of the Rule 26 relevance standard will depend on the context of the particular action, the determination of relevance is within the district court's discretion.  <u>Bowman v. Gen. Motors Corp.</u>, 64 F.R.D. 62, 69 (E.D. Pa. 1974).

Nevertheless, the court is required, pursuant to Rule 26(b), to limit the scope of discovery, either on motion or on its own, where any one of three circumstances is attendant: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.  Fed. R. Civ. P. 26(b)(2)(c).

**B.     Motion for Protective Order**

"In the context of discovery, it is well-established that a party wishing to obtain an order of protection over discovery material must demonstrate that 'good cause' exists for the order of

protection." <u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 786 (3d Cir. 1994) (citing Fed. R.

Civ. P. 26(c); <u>Smith v. Bic Corp.</u>, 869 F.2d 194, 199 (3d Cir. 1989)).  "Good cause is established

on a showing that disclosure will work a clearly defined and serious injury to the party seeking

closure."  <u>Id.</u>  The Third Circuit has enunciated a list of non-exhaustive factors that the district

court can consider in determining whether "good cause" exists.  <u>See id.</u> at 787-91.  Specifically,

the list of factors includes:

> 1) whether disclosure will violate any privacy interests;
> 2) whether the information is being sought for a legitimate
>    purpose or for an improper purpose;
> 3) whether disclosure of the information will cause a party
>    embarrassment;
> 4) whether confidentiality is being sought over information
>    important to the public health and safety;
> 5) whether the sharing of information among litigants will
>    promote fairness and efficiency;
> 6) whether a party benefitting from the order of confidentiality
>    is a public entity or official; and
> 7) whether the case involves issues important to the public.

<u>Glenmade Trust Co. v. Thompson</u>, 56 F.3d 476, 483 (3d Cir. 1995) (citing <u>Pansy</u>, 23 F.3d at 787-

91.  The party seeking a protective order bears the burden of persuasion and "broad allegations

of harm, unsubstantiated by specific examples or articulated reasoning do not satisfy the Rule

26(c) test."  <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d Cir. 1986).  "The mere

fact that plaintiffs intend to use [discovery] materials outside of this litigation is not 'good cause'

to support the protective order, unless defendants can establish that the discovery was not

procured in good faith for the purposes of this litigation."  <u>Cipollone v. Liggett Group, Inc.</u>, 113

F.R.D. 86, 93 (D.N.J. 1986).

## III.    DISCUSSION

Menefee asserts that she can properly request discovery that is not limited to information and documents that relate only to her particular dispute with ChoicePoint because: (1) the reasonableness of ChoicePoint's general procedures are at issue; and (2) a necessary element of Menefee's burden of proof under her punitive damages claim is "willfulness," which allows for discovery that is separate from the particular facts surrounding Menefee's individual dispute with ChoicePoint.  However, Menefee's rationale for requesting such discovery does not justify the overbreadth of her requests.

Request for Production 5 (which effectively seeks all Esteem operational documents), Request for Production 1 (which effectively asks for all documents relating to the data ChoicePoint maintains regarding Esteem records), and Request for Production 6 (which effectively seeks all documents concerning Rite Aid) are overly broad requests which place a burden on ChoicePoint that outweighs the likely benefit to Menefee, considering the information that ChoicePoint has already agreed to provide, subject to a protective order.  First, ChoicePoint has agreed to disclose the data fields associated with Menefee's Esteem Report and produce documents responsive to Request for Production 5, which would specifically include the written procedures applicable to Menefee's report and ChoicePoint's reinvestigation.  Second, ChoicePoint has agreed to identify all the ChoicePoint employees with knowledge of Menefee's Esteem Report and the reinvestigation.  Furthermore, ChoicePoint has agreed to provide Menefee with information concerning all lawsuits against Esteem for the last three years.  Finally, ChoicePoint has agreed to produce the contract between Rite Aid and ChoicePoint.  The employees ChoicePoint has agreed to identify, if deposed, would be able to testify regarding the

8

report and reinvestigation, including the procedures applied in conducting this task.  This Court is satisfied that the reasonableness of ChoicePoint's general procedures can be adequately assessed through such deposition testimony without requiring ChoicePoint to produce every document relating to the operation of the Esteem system.  See Garvey v. Nat'l Grange Mut. Ins. Co., 167 F.R.D. 391, 396 (E.D. Pa. 1996) (explaining that plaintiff had the opportunity to depose defendant's employees who were actually involved with the claim and thus would not need to discover defendant's corporate manuals).

Nevertheless, while Menefee's Requests for Production are overly broad, the information sought is relevant to Menefee's claim for punitive damages.  The Supreme Court has found that "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct," and has instructed courts to consider several factors in determining the reprehensibility of a defendant, including whether "the conduct involved repeated actions or was an isolated incident."  State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003) (citing BMW of North Am., Inc. v. Gore, 517 U.S. 559, 575-77 (1996)) (internal quotations omitted).  Therefore, evidence showing whether the conduct involved repeated actions or was an isolated incident is relevant to Menefee's punitive damages claim.

Interrogatories 4A and 4B, which ask for a description of the data-keeping practices within the Esteem system and of the documents generated in the course of processing a consumer dispute, were submitted by Menefee "in the hopes that this information would enable her to follow up with more precise data requests."  (Pl.'s Memo. Supp. Mot. Compel at 7.)  To support her need for this information, Menefee asserts:

Such evidence could, perhaps, show that Rite Aid's submissions of so-called theft

9

"admission statements" were of a facially different quality than other Esteem
members, or in a suspiciously higher volume; it might show that the time spent, or
the evidence considered, in disposing of a typical consumer challenge to the
accuracy of an Esteem record demonstrates a reckless disregard for the rights of
the individuals in its database; it might show that ChoicePoint rarely or never
second guesses the accuracy of a report submitted by its members.

(Pl.'s Memo. Supp. Mot. Compel at 15-16.)  While providing a summary of the data-keeping

practices employed by ChoicePoint does not appear to be unduly burdensome, this Court is

nonetheless concerned that subsequent responses to specific follow-up requests may implicate

the first Pansy factor – whether disclosure will violate any privacy interests.  In Hall v.

Harleysville Ins. Co., the plaintiffs asserted that they required the names of other individuals who

had their credit reports pulled by the defendants to show, among other things, "willfulness,

relevant to punitive damages."  164 F.R.D. 172, 173 (E.D. Pa. 1995).  The court found, however,

that the names of the other individuals were irrelevant to the FCRA litigation.  Id.  The court then

ordered the defendants to comply with the plaintiffs' discovery but instructed them to "redact all

identifying information from the records as well as the credit information disclosed therein."  Id.

Similarly, this Court believes that ChoicePoint should comply with Menefee's discovery

requests that are reasonably calculated to lead to evidence showing whether ChoicePoint's

conduct involved repeated actions, unless ChoicePoint can explain its objections and provide

factual support as to its claims of undue burden or overbreadth, and as long as all identifying

information of individuals who are the subjects of Esteem reports (besides Menefee) is redacted

from the disclosed information.

With respect to Interrogatories 6 and 10, this Court believes they are unreasonably

cumulative or duplicative because Interrogatories 4A and 4B encompass Interrogatories 6 and 10

and ask for essentially the same information.  Regarding Interrogatory 7, ChoicePoint has identified all the ChoicePoint employees with knowledge of Menefee's report and the reinvestigation, and Menefee has not offered any reason why ChoicePoint's current employees need to be identified.

Finally, because ChoicePoint has not met its burden of showing that "the discovery was not procured in good faith for the purposes of this litigation," this Court is reluctant to include in a protective order a provision which would deny Menefee or her counsel the ability to use any and all discovery material outside of this litigation.  See Cipollone, 113 F.R.D. at 93.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| DORIS MENEFEE, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | No.  08-981 |
| v. | : | |
| | : | |
| CHOICEPOINT, INC. and | : | |
| RITE AID CORPORATION, | : | |
| | : | |
| _____Defendants. | : | |
| | : | |

### ORDER

**AND NOW**, this  26th  day of January, 2009, in consideration of the Motion to Compel

Discovery filed by Plaintiff Doris Menefee (Doc. No. 22) and the Motion for Protective Order

filed by Defendant ChoicePoint, Inc. (Doc. No. 23), and the responses and replies thereto, it is

hereby **ORDERED** that:

1)      Menefee's Motion is **GRANTED IN PART** and **DENIED IN PART**;

2)      ChoicePoint's Motion is **GRANTED IN PART** and **DENIED IN PART**;

3)      ChoicePoint's objections to Interrogatories 6, 7 and 10, and Requests for

Production 1, 5 and 6 are **SUSTAINED**;

4)      ChoicePoint's objections to Interrogatories 4A and 4B are **OVERRULED**;

5)      ChoicePoint shall redact from any disclosed information all identifying

information of individuals (besides Menefee) who are the subjects of Esteem

reports;

6)      Without disclosing the identifying information of individuals (besides Menefee) who are the subjects of Esteem reports, ChoicePoint shall disclose the data fields associated with Menefee's Esteem Report, produce documents which specifically include the written procedures applicable to Menefee's report and ChoicePoint's reinvestigation, identify all the ChoicePoint employees with knowledge of Menefee's Esteem Report and the reinvestigation, provide Menefee with information concerning all lawsuits against Esteem for the last three years, produce the contract between Rite Aid and ChoicePoint, and respond to Menefee's Interrogatories 4A and 4B.

7)      Without disclosing the identifying information of individuals (besides Menefee) who are the subjects of Esteem reports, ChoicePoint shall comply with Menefee's discovery requests that are reasonably calculated to lead to evidence showing whether ChoicePoint's conduct involved repeated actions, unless ChoicePoint can explain its objections and provide factual support as to its claims of undue burden or overbreadth; and

8)      The Protective Order shall be **GRANTED** to the extent that it does not deny Menefee or her counsel the ability to use discovery materials outside of this litigation.

BY THE COURT:


/s/ Robert F. Kelly
ROBERT F. KELLY
SENIOR JUDGE

2